# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **ROGER WILLIAMS**, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>**AMALGAMATED TRANSIT UNION**<br>**LOCAL 689**, et al., )<br>)<br>Defendants. )<br>)<br>) | Civil Action No. 15-cv-596 (TSC) |

## MEMORANDUM OPINION

Plaintiff Roger Williams is a Washington Metropolitan Area Transit Authority

("WMATA") bus operator and a member of the Amalgamated Transit Union Local 689

("Union").  WMATA and the Union are parties to a Collective Bargaining Agreement ("CBA"),

and Plaintiff alleges that WMATA violated the terms of the CBA when it accused him of

violating its periodic drug testing guidelines and subsequently suspended him.  He further alleges

that the Union breached its duty of fair representation by failing to take the matter to arbitration

and instead entering into a settlement agreement without his knowledge and without an

investigation.  WMATA and the Union have moved for dismissal of Plaintiff's lawsuit.  For the

reasons set forth below, the court will **GRANT** both motions.

### I. BACKGROUND

Plaintiff is a WMATA bus driver who, on March 15, 2013, received a letter from

WMATA scheduling a Department of Transportation ("DOT") required medical examination for

March 18, 2013.  (Am. Compl. ¶¶ 17–19).  Plaintiff appeared for the examination and, prior to

leaving, received WMATA documents indicating that his "evaluation [wa]s complete" and that

he was approved for return to duty without restrictions.  (Am. Compl. ¶¶ 21–23; Pls. Resp. to

Union Mot. at Ex. A.).  After leaving the medical examination, however, he received a telephone

call from one of the staff members at the medical facility informing him he needed to return to

finish a urine drug test.  (Union Ex. 1).  Approximately five minutes later, Plaintiff received

another telephone call from the medical facility informing him that everything was fine and there

was no need for him return.  (*Id.*)

The following day, March 19, 2013, WMATA issued a Memorandum to the Plaintiff

telling him that he was being suspended without pay for 180 days because he violated "WMATA

Policy/Instruction: P/17.21/4.17(B) Refusal to Test," by failing to "[r]emain at the testing site

until the [drug] testing process [w]as completed."  (Pls. Resp. to Union Mot. at Ex. B).  As a

result of this alleged failure, Plaintiff was suspended and WMATA required that he enroll in the

Employee Assistance Program ("EAP") or face discharge.  (*Id.*; Am. Compl. ¶¶ 25, 27).

Plaintiff enrolled in the EAP, which required that he attend substance abuse education

twice a week and submit to periodic drug testing.  (*Id.* ¶¶ 30–32).  He attended the education

programs, passed all of his fourteen drug tests, and returned to work sometime after July 31,

2013.  (*Id.* ¶¶ 33–36).

Around the time he enrolled in the EAP, Plaintiff filed a grievance over the suspension

based on WMATA's finding that he had refused to comply with the drug testing policy.  (Union

Ex. 1).  The Union did not communicate with Plaintiff about the grievance until approximately

one year later, on March 13, 2014, when he was notified that the grievance had been settled, but

was not told the terms of the settlement.  (Pls. Resp. to Union Mot. at Ex. D., Williams Decl.;

Am. Compl. ¶ 41).  Plaintiff advised the Union that anything less than exoneration was

unacceptable.  (Pls. Resp. to Union Mot. at Ex. D., Williams Decl.).  Nonetheless, WMATA

subsequently deposited the settlement proceeds ($8,434.11) in his bank account.  (*Id*.; Am.

Compl. ¶¶ 44–45).

On July 28, 2014, Plaintiff's attorney sent a letter to WMATA contesting the suspension

and rejecting the settlement.  (Am. Compl. ¶¶ 48–51).  Included with the letter was a cashier's

check in the amount of the settlement.  (*Id*.)  A WMATA representative signed for the letter on

July 30, 2014.  (*Id*. ¶ 52).  The check was never returned to Plaintiff and the Union failed to

respond to his "numerous inquiries" about his rejection of the settlement.  (*Id*. ¶¶ 53–54).  The

parties do not indicate whether WMATA endorsed the check.

More than six months later, on March 16, 2015, Plaintiff filed a complaint against

WMATA and the Union in District of Columbia Superior Court, asserting claims for negligence,

intentional infliction of emotional distress, breach of fiduciary duty, fraud, conspiracy, and

negligent supervision and training.  (ECF No. 1 at ECF pp. 3–15).  The Defendants removed the

action to this court and Plaintiff subsequently obtained leave to amend his complaint.  In his

Amended Complaint, Plaintiff raises twelve claims, which he appears to assert pursuant to state

law.[1]  The Union seeks dismissal of this action pursuant to Federal Rule of Civil Procedure

12(b)(6), and WMATA seeks dismissal pursuant to both 12(b)(6) and 12(b)(1).[2]

---

[1]  Even though Plaintiff did not cite to any statutory or common law in his Amended Complaint, his claims appear to be brought under state law, save for his duty of fair representation claim.

[2]  Given the court's dismissal of this action on timeliness grounds, the court declines to reach WMATA's 12(b)(1) jurisdictional argument asserted as a defense to some of Plaintiff's claims. *See* Fed. R. Civ. P. 12(b)(1); *Watters v. WMATA*, 295 F.3d 36, 39–40 (D.C. Cir. 2002) (where sovereign immunity applies, a district court lacks jurisdiction).

## II. LEGAL STANDARDS

A motion to dismiss under Rule 12(b)(6) for failure to state a claim "tests the legal sufficiency of a complaint." *Browning v. Clinton*, 292 F.3d 235, 242 (D.C. Cir. 2002). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks and citation omitted). In most instances, when deciding a Rule 12(b)(6) motion, a court may "consider only the facts alleged in the complaint, any documents either attached to or incorporated in the complaint and matters of which [the Court] may take judicial notice." *EEOC v. St. Francis Xavier Parochial Sch.*, 117 F.3d 621, 624 (D.C. Cir. 1997). Additionally, "the Court may consider documents specifically referenced in the complaint where the authenticity of the document is not questioned." *United Mine Workers of Am., Int'l Union v. Dye*, No. CIV.A. 06-1053(JDB), 2006 WL 2460717, at *6 (D.D.C. Aug. 23, 2006); *see also N.Y. State Bar Ass'n v. FTC*, 276 F. Supp. 2d 110, 114 n.6 (D.D.C. 2003) (noting that "a document is not 'outside' the complaint if the complaint specifically refers to the document and if its authenticity is not questioned") (quoting *Cooper v. Pickett*, 137 F.3d 616, 622–23 (9th Cir. 1997)).

## III. ANALYSIS

### A.    Hybrid Section 301 Claims & Preemption

Although Plaintiff does not explicitly assert a federal hybrid Section 301/fair representation claim, the court construes his complaint as alleging such because he charges WMATA "with breach of the collective bargaining agreement and charges the union with breaching its statutory duty of fair representation." *See Simmons v. Howard Univ.*, 157 F.3d 914, 916 (D.C. Cir. 1998) (citing *DelCostello v. Int'l Bhd. of Teamsters,* 462 U.S. 151, 165 (1983)).

If a plaintiff brings such a claim along with state law claims based on similar conduct, the court must examine whether the state law claims are preempted by the hybrid Section 301 claim. *See Brown v. Gino Morena Enters.*, 44 F. Supp. 2d 41, 50 (D.D.C. 1999) ("[T]he Court must first determine whether plaintiff's [state law claims] are indeed pendent claims or whether they are preempted by § 301.") (citing *Lingle v. Norge Div. of Magic Chef, Inc.*, 486 U.S. 399, 405–06 (1988)); *see May v. Shuttle, Inc.*, 129 F.3d 165, 179 (D.C. Cir. 1997). As a court in this district has noted:

> A plaintiff . . . cannot wiggle out from under the shadow of the [federal labor law statute] through clever pleading—for example, by framing a claim as a breach of contract rather than an unfair labor practice. "Pre-emption is designed to shield the system from conflicting regulation of conduct. It is the <u>conduct</u> being regulated, not the formal description of governing legal standards, that is the proper focus."

*Jackson v. Teamsters Local Union 922*, 991 F. Supp. 2d 71, 78 (D.D.C. 2014) (emphasis in original) (citations and alterations omitted).

   1.   <u>Preempted Claims Asserted Against WMATA</u>

Plaintiff's claims against WMATA include

- breach of contract (e.g., WMATA breached the CBA by lodging unfounded allegations against Plaintiff and disciplining him; WMATA entered into a settlement agreement even though it knew the refusal to test allegation was false) (Am. Compl. ¶¶ 77–78);

- wrongful suspension (e.g., WMATA suspended Plaintiff even though he had fully complied with the WMATA DOT physical examination requirements) (*Id.* ¶ 88)

- negligence (e.g., WMATA failed to employ necessary and reasonable measures when it made a notation on the EAP form that he had refused to test; WMATA carelessly and recklessly suspended Plaintiff even though he fully complied with the WMATA DOT physical examination requirements) (*Id.* ¶¶ 108, 110);

- fraudulent concealment (e.g., WMATA and the Union fraudulently concealed non-action on the plaintiff's request to reject the Settlement Agreement) (*Id.* ¶ 218).

The Supreme Court has held that "when resolution of a state-law claim is substantially dependent upon analysis of the terms of an agreement made between the parties in a labor contract, that claim must either be treated as a § 301 claim or dismissed as pre-empted by federal labor-contract law." *Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 220 (1985) (citation omitted). All of Plaintiff's claims against WMATA are founded on Plaintiff's assertion that WMATA violated the CBA by: (1) lodging unfounded allegations against him that he had violated the WMATA drug testing policy, despite evidence that he complied with all applicable requirements; (2) wrongfully suspending him; and (3) entering into a settlement agreement with the Union. As such, these claims are "substantially dependent upon analysis of the terms of [the CBA]" and, therefore, must be treated as Section 301 claims. *See id.* Accordingly, the court will treat Plaintiff's claims against WMATA as Section 301 claims.

2.   <u>Preempted Claims Asserted Against Local 689</u>

In Section 301 hybrid cases, state law "claims [asserted against the union] are preempted [if] they do not 'arise wholly outside the ambit of those obligations circumscribed by a union's duty of fair representation under the collective bargaining agreement.'" *Hollie v. Smith*, 813 F. Supp. 2d 214, 218 (D.D.C. 2011) (citing *Condon v. Local 2944, United Steelworkers of Am., AFL-CIO,* 683 F.2d 590, 595 (1st Cir. 1982)); *see also May v. Shuttle, Inc.,* 129 F.3d 165, 179 D.C. Cir. 1997) (agreeing that "the federal duty of fair representation preempts identical state law claims"). A union breaches its statutory duty to represent its members when the union's actions are "arbitrary, discriminatory, or in bad faith." *Plumbers & Pipe Fitters Local Union No. 32 v. NLRB*, 50 F.3d 29, 31 (D.C. Cir. 1995) (citing *Vaca v. Sipes,* 386 U.S. 171, 177, (1967)).

Plaintiff's claims against the Union include:

- Breach of Duty of Fair Representation ("DFR") (e.g., the Union's representation of Plaintiff was deficient and failed to protect Plaintiff's rights; the Union acted in an arbitrary manner) (Am. Compl. ¶¶ 171, 177);

- Intentional Infliction of Emotional Distress ("IIED")(e.g., Plaintiff suffered severe emotional distress as a result of the Union's failure to fairly represent him; because of the Union's careless, reckless and arbitrary conduct, Plaintiff was injured and subjected to severe stress and emotional distress ) (*Id.* ¶¶ 119, 120);[3]

- Breach of Contract (e.g., the Union did not fairly represent Plaintiff; the Union "breached its duty to fairly represent the Plaintiff by entering into a covert agreement with WMATA adverse to the plaintiff's interests") (*Id.* ¶¶ 131, 133);

- Breach of Fiduciary Duty (e.g., the Union breached its fiduciary duty by failing to interview pertinent witnesses; the Union breached its fiduciary duty by failing to communicate with Plaintiff after he rejected the Settlement and failing to reopen the grievance proceedings) (*Id.* ¶¶ 143–145, 148);

- Fraud (e.g., the Union failed to effectively advocate on Plaintiff's behalf during the grievance process; the Union deceived Plaintiff and fraudulently entered into a Settlement Agreement) (*Id.* ¶¶ 200, 210–11);

- Fraudulent Concealment (e.g., WMATA and the Union fraudulently concealed inaction on Plaintiff's request to reject the Settlement Agreement) (*Id.* ¶ 218);

- Negligent Supervision and Training (e.g., the Union failed to prevent Plaintiff's union representative from acting in an arbitrary and capricious manner; the Union failed to adequately supervise Plaintiff's union representative and prevent him from acting recklessly) (*Id.* ¶¶ 222, 224).

Although not identified by statute or case law, Plaintiff's DFR claim against the Union is by definition an element of a hybrid Section 301 claim. *See Simmons*, 157 F.3d at 916 (explaining that hybrid Section 301 claims involve allegations that the employer breached the CBA combined with allegations that the union breached its statutory DFR). Accordingly, Plaintiff's DFR claim is not preempted.

---

[3]  Although Plaintiff lists the "union" in the title for his IIED count, the last paragraph under this counts states that "[t]he plaintiff's emotional stress and distress derived solely from the actions taken by WMATA." (Am. Compl. ¶ 126).  In any event, whether or not Plaintiff asserted the IIED claim against WMATA or the Union, the outcome is still the same: the claim is preempted.

The remaining claims—though labeled otherwise—are essentially the same as Plaintiff's DFR claim; they are all premised on the notion that the Union violated its DFR by handling Plaintiff's grievance in bad faith, as well as in an arbitrary or discriminatory manner.[4]  As such, these claims do not "arise wholly outside the ambit" of the Union's duty of fair representation and therefore the claims are preempted. *See Hollie*, 813 F. Supp. 2d at 218.[5]

**B.     Statute of Limitations**

Hybrid Section 301 "claims are subject to the six month statute of limitations . . . which begins to run when 'the claimant discovers, or in the exercise of reasonable diligence should have discovered, the acts constituting the alleged violation.'" *Simmons*, 157 F.3d at 916 (citations omitted).  Accordingly, "[w]here a union rejects or abandons the claims of an

---

[4]  Plaintiff also brings a conspiracy claim against both Defendants, alleging that they conspired to deny him the opportunity to fully pursue his grievance.  (Pls. Response to Union's Mot. p. 10; *id.* at Ex. C).  This claim is preempted because it depends on interpretation of the CBA and application of the Union's DFR.

 Moreover, even if the claim were not preempted, it would still fail because in the District of Columbia, an underlying tort claim is necessary to support a conspiracy claim. *Blakeney v. O'Donnell*, 117 F. Supp. 3d 6, 14 (D.D.C. 2015) ("The District is correct that civil conspiracy is not an independent tort. . . .  A claim for civil conspiracy thus fails unless the elements of [an] underlying tort are satisfied.") (citations and quotations omitted).

[5]   The IIED, fraud, and fraudulent concealment claims are also subject to dismissal because Plaintiff has not pled sufficient facts to support these claims. *See Elhusseini v. Compass Grp. USA, Inc.,* 578 F. Supp. 2d 6, 23 (D.D.C. 2008) (quoting *McManus v. MCI Commc'ns Corp.,* 748 A.2d 949, 958 (D.C. 2000) ("IIED claims require extreme and outrageous conduct by the defendant, and "[i]n the employment context, to constitute extreme and outrageous conduct, the conduct must be 'so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community.'"); Fed. R. Civ. P. 9(b) ("In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake."); *McQueen v. Woodstream Corp.*, 248 F.R.D. 73, 77 (D.D.C. 2008) ("[T]he circumstances that the claimant must plead with particularity include matters such as the time, place and content of the false misrepresentations; the misrepresented fact; and what the opponent retained or the claimant lost as a consequence of the alleged fraud.") (citation omitted).

aggrieved employee at some point in the grievance process, the six month limitation[s period] runs when the employee knows or, through the exercise of reasonable diligence, should have known of that union's decision or action." *Cash v. Washington Metro. Area Transit Auth.*, No. CIV.A. 04-0013(RWR), 2005 WL 6949855, at *2–4 (D.D.C. Jan. 13, 2005) (citing *Lucas v. Mountain States Tel. & Tel.,* 909 F.2d 419, 421 (10th Cir. 1990)) (alterations omitted).

Defendants argue that Plaintiff's lawsuit is untimely because he filed it after the six month limitations period had run.  It is undisputed that the Union notified Plaintiff that it had settled his grievance on or around March 13, 2014.  (Pls. Resp. to Union Mot. at Ex. D, Williams Decl.; Am. Compl. ¶ 39).  While the timing is unclear, it appears that he later learned the terms of the agreement and he advised his Union representative that he rejected the settlement offer. (*Id.* ¶ 42).  Despite his rejection of the offer, WMATA later deposited the settlement proceeds in his bank account; the date of this occurrence is unclear.  (*Id.* ¶¶ 44–45).  "As a result of the Union's lack of action regarding the plaintiff's rejection of the settlement," Plaintiff took matters into his own hands and, on July 28, 2014, his attorney returned the settlement funds to WMATA. (*Id.* ¶¶ 47–48).  In the accompanying letter, Plaintiff's counsel indicated that Plaintiff still contested the suspension, that the settlement had been reached without Plaintiff's consent, and that Plaintiff was returning the settlement proceeds as a rejection of the settlement offer.  (*Id.* ¶¶ 49–50).  On July 30, 2014, a WMATA representative signed for the package that included the letter and the check.  (*Id.* ¶ 52).  After WMATA received the check, the Union never responded to Plaintiff's "numerous inquiries" about the matter.  (*Id.* ¶¶ 53–54).

The six month limitations period began to run after Plaintiff returned the check on July 30, 2014.  Thus, Plaintiff had until on or around January 30, 2015[6] to file a timely lawsuit, but he waited until March 16, 2015—more than one and a half months later.

Plaintiff proffers several arguments in an effort to save his claim, all of which are unavailing.  First, citing *DelCostello v. International Brotherhood of Teamsters*, 462 U.S. 151 (1983), Plaintiff argues that the six month statute of limitations does not apply to this case, but rather the District of Columbia three-year limitations period for breach of contract cases.

Plaintiff's argument ignores the issue presented and the holding in *DelCostello*.  In that case, the Supreme Court addressed the question of the appropriate statute of limitations for lawsuits "by an employee or employees against an employer and a union, alleging that the employer had breached a provision of a collective bargaining agreement, and that the union had breached its duty of fair representation by mishandling the ensuing grievance-and-arbitration proceedings." *Id.* at 154.  The Court concluded that "§ 10(b) [of the National Labor Relations Act—which provides for a six-month limitations period] should be the applicable statute of limitations governing the suit, both against the employer and against the union." *Id.* at 155; *Simmons*, 157 F.3d at 916 ("[H]ybrid § 301/fair representation claim[s] . . . are subject to the six-month statute of limitations provided in § 10(b) of the National Labor Relations Act, 29 U.S.C. § 160(b).") (citations omitted).  Thus, the District of Columbia three-year statute of limitations period for breach of contract claims does not apply in this case, which involves hybrid Section 301 claims.

---

[6]  The court notes that the National Labor Relations Act specifically provides for a "six month," rather than 180-day limitations period.  *See Ifill v. N.Y. State Court Officers Ass'n*, 655 F. Supp. 2d 382, 394 (S.D.N.Y.  2009) ("Courts have generally construed the six-month limitations period found in 29 U.S.C. § 160(b) to refer to six calendar months rather than 180 days.") (citing *Dowty v. Pioneer Rural Elec. Coop.*, 573 F. Supp. 155, 158 n.2 (S.D. Ohio 1983)).

Next, Plaintiff quotes *Smith v. Washington Post Co.*, 962 F. Supp. 2d 79, 86 (D.D.C.

2013), in which the court noted that wrongful

> acts or breaches of duty which occur in distinct intervals or installments, as opposed
> to being continuous, cause distinct and severable injuries. Consequently, each
> breach gives rise to new and separate cause of action and the statutes of limitations
> in both jurisdictions run separately for each.

(*See* Pls. Resp. to Union Mot. at ECF p. 6) (citing *Smith*, 962 F. Supp. 2d at 86) (citing *Union

Labor Life Ins. Co. v. Sheet Metal Workers Nat. Health Plan,* Civ. No. 90–2728(RCL), 1991 WL

212232 (D.D.C. Sept. 30, 1991)).

   *Smith* involved allegations that the defendant had breached a contract, over a period of at

least four years, by unilaterally changing the terms of the contract.  (*Id.*)  Even though Smith

filed his lawsuit more than three years after the first breach, the court refused to dismiss the case

because it was unclear from the complaint whether Smith had alleged one breach involving

unilateral contract changes, or multiple breaches, including some that may have occurred within

the limitations period.  *Smith,* 962 F. Supp. 2d at 85–86.  The court therefore found that it could

not conclusively determine that the complaint was time barred by the District of Columbia

statute of limitations for breach of contract.  *Id*. at 86.

   Here, Plaintiff does not make allegations similar to those in *Smith* and, unlike *Smith*,

Plaintiff's case does not involve viable state law breach of contract claims.  Moreover, to the

extent Plaintiff seeks to rely on a "continuing violation theory," if that were possible in this

context, he must support his theory with citation to federal legal authority, rather than state law.

*See Himmelstein v. Comcast of the Dist., L.L.C.*, 931 F. Supp. 2d 48, 60 (D.D.C. 2013) ("When

interpreting a federal statute, federal courts apply the federal standards of construction, not those

applied by state courts.") (citing *Miss. Band of Choctaw Indians v. Holyfield,* 490 U.S. 30, 43,

(1989)) (some citations omitted).

Next, Plaintiff argues that the statute of limitations "has not expired because of the Union's inaction over a period of time and the Union's breach of the [CBA]." (Pls. Resp. to Union's Mot. p. 8). Plaintiff also argues that he did not become aware that the Union would "take no further action on his grievance" until after he filed this lawsuit and saw the actual settlement document attached to the Union's motion to dismiss. (Pls. Resp. to WMATA's Mot. p. 7).

Plaintiff's arguments are mystifying because the filing of this lawsuit, in which Plaintiff clearly asserts a "duty of fair representation" claim, establishes that Plaintiff became aware that the Union was not going to pursue his grievance long before the Union filed its motion to dismiss. *See Simmons*, 157 F.3d at 916 (citations omitted) (noting that filing a DFR claim establishes that Plaintiff "has by then, as a matter of law, 'discovered' the grounds for his hybrid § 301 claim").

Alternatively, Plaintiff asks this court to exercise its equitable power and toll the limitations period. While "a defendant bears the burden of pleading and proving [the Plaintiff's] failure to . . . timely file an action in court, once defendant's burden has been met, a plaintiff must establish his eligibility to invoke equitable tolling." *Gupta v. Northrop Grumman Corp.*, 462 F. Supp. 2d 56, 59 (D.D.C. 2006) (citing *Bowden v. United States,* 106 F.3d 433, 437 (D.C. Cir. 1997)); *Saltz v. Lehman,* 672 F.2d 207, 209 (D.C. Cir. 1982) (some citations omitted). The D.C. Circuit has made clear that "[t]he court's equitable power to toll the statute of limitations will be exercised only in extraordinary and carefully circumscribed instances." *Mondy v. Sec'y of the Army,* 845 F.2d 1051, 1057 (D.C. Cir. 1988). For example, the limitations period "may be tolled when the plaintiff is fraudulently induced to delay filing his suit," *Simmons,* 157 F.3d at 917 (citations omitted), or where "affirmative misconduct on the part of a defendant lulled the

plaintiff into inaction." *Mondy*, 845 F.2d at 1057.  The court finds that Plaintiff has not met either of these conditions.

    1.  <u>Equitable Tolling Arguments Based on WMATA's Conduct</u>.

    Plaintiff argues that the limitations period should be equitably tolled because WMATA engaged in affirmative misconduct that prevented him from pursuing his administrative remedies.  (Pls. Response to WMATA's Mot. p. 7) (citing *Dove v. Washington Metro. Area Transit Auth.*, 402 F. Supp. 2d 91 (D.D.C. 2005), *aff'd*, No. 05-7118, 2006 WL 7136123 (D.C. Cir. Mar. 13, 2006)).  Specifically, he charges WMATA with:

- "[I]nitiating a settlement with the Union on the plaintiff's behalf despite the plaintiff's rejection of the settlement" (Pls. Response to WMATA's Mot. pp. 7-8);

- Failing to notify Plaintiff of the settlement.  (Pls. Response to WMATA's Mot. p. 8);

- Failing to comply with its own grievance procedures, which mandate that WMATA obtain an employee's written authorization to secure Social Security records for purposes of verifying income when the employee's grievance is resolved with an award of retroactive pay in excess of one month.  (Pls. Response to WMATA's Mot. pp. 7-8) (citing Pls. Resp. to WMATA's Mot. at Ex. A, CBA excerpts);

- Violating the CBA, which provides that an employee who is suspended "without sufficient cause" "shall be paid for the time lost at the employee's regular rate during such suspension."  (Pls. Resp. to WMATA's Mot. p. 8).

Plaintiff argues that these allegations amount to "extraordinary circumstances," justifying equitable tolling in this case. (Pls. Resp. to WMATA's Mot. p. 9).

    The court disagrees because, even if Plaintiff is right that WMATA violated the CBA in each of these instances, nothing about WMATA's conduct excuses his failure to file his lawsuit within the six month limitations period.  Plaintiff became aware of the settlement on or around March 2014.  While it is unclear how much he knew about the terms of the settlement in March 2014, it is undisputed that WMATA received Plaintiff's rejection letter, along with the cashier's check on July 30, 2014 and apparently never endorsed the check or otherwise responded.

Plaintiff filed his lawsuit seven and one-half months later, but gives no reasonable explanation for missing the six month limitations deadline. WMATA's failure to respond to Plaintiff's letter and return of the settlement funds did not prevent Plaintiff from filing a timely lawsuit, and without some evidence that WMATA "fraudulently induced [Plaintiff] to delay filing his suit," or that WMATA engaged in some "affirmative misconduct [that] lulled the plaintiff into inaction," Plaintiff has no basis for equitable tolling on his claims. *Simmons,* 157 F.3d at 917; *Mondy*, 845 F.2d at 1057.

    2.  <u>Equitable Tolling Based on the Union's Conduct</u>

    Plaintiff argues that the limitations period should be equitably tolled because the Union's failure to keep him apprised of the grievance and settlement proceedings prevented him from determining whether the Union followed proper grievance procedures or engaged in affirmative misconduct. (Pls. Resp. to Union's Mot. pp. 8-9). He also argues that tolling is justified because the Union never took any action to renegotiate the settlement. (Pls. Resp. to Union's Mot. p. 7-8).

    Plaintiff's arguments are again unavailing. He has not explained how the Union's failure to keep him apprised of the grievance and settlement process excuses his untimely lawsuit. By the time he returned the check to WMATA, Plaintiff clearly was aware of the results of the grievance negotiations; the question simply becomes when a reasonable person would have realized that the Union had "reject[ed] or abandon[ed]" his cause. *See Cash*, 2005 WL 6949855, at *2; *see Delaney v. District of Columbia*, 612 F. Supp. 2d 38, 42 (D.D.C. 2009) ("The statute of limitations begins running when a plaintiff knew or should have known that the union had stopped pursuing his grievance.") (citing *Cephas v. MVM, Inc.,* 520 F.3d 480, 488 (D.C. Cir. 2008)). That moment should have come shortly after Plaintiff returned the check and the Union

14

refused to respond to his inquires.  Instead, Plaintiff waited seven and one-half months after he

returned to the check to file his lawsuit, well after expiration of the six month limitations period.

Moreover, the result here does not change simply because Plaintiff made "numerous,"

(Am. Compl. ¶ 54), unsuccessful inquiries to the Union in an attempt to reject the settlement

agreement.  If repeated attempts to reopen a grievance proceeding or reopen settlement

negotiations "were to perpetually toll the statute of limitations" despite reasonable indications

that such attempts were futile, "the statutory time bar would be illusory."  *Plain v. AT & T Corp.*,

424 F. Supp. 2d 11, 22–23 (D.D.C. 2006) (rejecting tolling argument where employer promised

in November that it would review plaintiff's termination appeal and she continued to request

reinstatement, but received no indication from the employer or the union after November that her

appeal was being pursued or had been reopened) (citing *Vadino v. A. Valey Eng'rs*, 903 F.2d

253, 262–63 (3d Cir. 1990)).

Finally, this is not a case where the Union "fraudulently induced [Plaintiff] to delay filing

his suit."  *Simmons*, 157 F.3d at 917 (citing *Demchik v. General Motors Corp.*, 821 F.2d 102,

105 (2d Cir. 1987)).  "Failure to return phone calls does not constitute affirmative misconduct

that would give rise to equitable tolling."  *Delaney v. District of Columbia,* 612 F. Supp. 2d 38,

43 (D.D.C. 2009).  Although the Union's conduct in not responding to Plaintiff's inquiries may

have been improper, under the facts presented here, the Union's conduct did not prevent Plaintiff

from "discover[ing] . . . the acts constituting the alleged violation" within the limitations period.

*See Simmons*, 157 F.3d at 916.  In other words, Plaintiff has not proffered any facts which might

establish that—despite his due diligence—he was unable to bring suit within the statutory period.

*See Dove v. Washington Metro. Area Transit Auth.*, 402 F. Supp. 2d 91, 98 (D.D.C. 2005), *aff'd,*

No. 05-7118, 2006 WL 7136123 (D.C. Cir. Mar. 13, 2006)).  Accordingly, he has not met his

burden of establishing that equitable tolling is appropriate in this case.

## IV. CONCLUSION

While the court takes no position on whether Plaintiff would have been successful, his

hybrid Section 301 claim could have survived Defendants' motions to dismiss had he filed it in

timely manner. [7]  By waiting too long to file suit, despite being aware that the Defendants had

taken actions which form the basis of his claim, he failed to diligently protect his rights.

Accordingly, the court will grant the Defendants' motions to dismiss. [8]


Date:  March 29, 2017


*Tanya S. Chutkan*
TANYA S. CHUTKAN
United States District Judge

---

[7]   The Union has an obligation "to serve the interests of all members without hostility or
discrimination toward any, to exercise its discretion with complete good faith and honesty, and to
avoid arbitrary conduct."  *Vaca v. Sipes,* 386 U.S. 177 (1967).  It breaches its duty of fair
representation when its "conduct toward a member of the collective bargaining unit is arbitrary,
discriminatory, or in bad faith." *Id.* at 191.  Thus, "a union acts in an 'arbitrary' manner when it
processes a grievance in a perfunctory fashion . . . or fails to conduct a minimal investigation of a
grievance."  *Clark-Williams v. Washington Metro. Area Transit Auth.*, No. CV 14-99 (RDM),
2016 WL 4186810, at *6 (D.D.C. Feb. 16, 2016) (quotations and alterations omitted) (quoting
*Vaca*, 386 U.S. at 191; *Peterson v. Kennedy*, 771 F.2d 1244, 1245 (9th Cir. 1985)).
    Viewing the facts in the light most favorable to Plaintiff, the court finds that, absent the
untimely filing, his Complaint contains allegations sufficient to support a hybrid Section 301
claim—at least in the face of the substantive arguments in the current motions to dismiss.

[8]   Plaintiff contends that dismissal of this action is inappropriate because he has not had an
opportunity to take discovery, (Pls. Resp. to Union's Mot. pp. 9-10), but Plaintiff has not
explained how anything he might find during discovery would justify his failure to file suit
within the limitations period.